UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| ROBIN RENEE TURNER, | Case No. 3:24-cv-00121-ART-CLB |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| LELAND DUDEK, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Robin Renee Turner appeals the Commissioner's denial of her application for Title II Social Security Disability Benefits. Before the Court is Turner's motion to remand (ECF No. 15) and Magistrate Judge Carla Baldwin's report and recommendation ("R&R") (ECF No. 23). The R&R recommends that the Court deny Turner's motion to remand and affirm the Commissioner's decision. For the reasons identified below, the Court adopts the R&R and denies Turner's motion to remand.

I. **LEGAL STANDARD**

　　**A. Standard of Review**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

---

[1] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

A reviewing court must affirm the Commissioner's decision if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue,* 698 F.3d 1153, 1159 (9th Cir. 2012) (citation omitted). The court considers the evidence in its entirety, weighing both the evidence that supports and that detracts from the ALJ's conclusion." *Luther v. Berryhill,* 891 F.3d 872, 875 (9th Cir. 2018). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson,* 359 F.3d at 1198. However, the court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely." *Garrison,* 759 F.3d at 1010.

### B. Disability Evaluation Process

Administrative law judges ("ALJs") apply a five-step evaluation process to determine whether a claimant qualifies as disabled. *Garrison v. Colvin,* 759 F.3d 995, 1010 (9th Cir. 2014). The five-step inquiry addresses the following questions: "(1) whether the claimant presently works in substantial gainful activity; (2) whether the claimant's impairment, or a combination of impairments, qualifies as severe; (3) whether the impairment, or combination of impairments, equals an impairment listed in the regulations; (4) whether the claimant's residual functional capacity allows her to perform her past relevant work; and (5) whether significant numbers of jobs exist in the national economy that the claimant can perform." *Popa v. Berryhill,* 872 F.3d 901, 905–06 (9th Cir. 2017); *see* 20 C.F.R. § 404.1520(a)(4).

//
//

2

## II. BACKGROUND

### A. Procedural History

The following relevant facts are taken from the R&R. (ECF No. 23 at 5–7.) Turner filed an application for disability benefits in 2020, alleging a disability onset date of January 28, 2019. (AR 59, 249–50, 276–81.) The Social Security Administration denied her application initially in 2021 and upon reconsideration in 2022. (AR 68, 127–31, 137–41.) After an administrative hearing in 2023, the ALJ found that Turner was not disabled. (AR 17–29.) Turner appeals that decision.

### B. ALJ Decision

At step one of the five-step evaluation process, the ALJ found that Turner had not engaged in substantial gainful activity since January 28, 2019, the alleged onset date. (AR 20.) At step two, the ALJ found that Turner had the following four severe impairments: cervical, thoracic, and lumbar degenerative disc disease. (AR 20–21.) The ALJ concluded that Turner's other reported impairments—osteopenia, incontinence, diverticulosis, hemmorrhoids, a benign hepatic hemangioma, and a history of polysubstance abuse—were not severe. (*Id.*) At step three, the ALJ determined that Turner did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 21–23.)

Next, the ALJ considered medical opinions and other evidence to determine Turner's residual functional capacity ("RFC"). (AR 23–28.) The ALJ found that Turner had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [T]he claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk for 4 hours of an 8-hour workday with standard breaks, for 30 minutes at time, with the option to sit at the work station for 10 minutes and continue working after 30 minutes of standing or walking; can sit for 6 hours of an 8-hour workday with standard breaks; can occasionally stoop, climb ramps and stairs,

>kneel, crawl and crouch, and can never climb ladders, ropes, and scaffolds. She can never balance, as that term is used in the Department of Labor's Selected Characteristics of Occupations.

(AR 23.) Based on this finding, the ALJ found that Turner could perform her past relevant work as a ticket writer. (AR 28.)

## III. DISCUSSION

Turner argues that the ALJ's decision violates the regulations and is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Dr. Pamela Corson and Dr. Kristen M. Marshall. (ECF No. 15 at 2, 9–16.) The R&R reviewed the ALJ's evaluation of both doctors' opinions and found that the ALJ was free of legal error and supported by substantial evidence. (ECF No. 23 at 7–12.) Turner objects to the R&R's framing of the issues; the R&R's finding that the ALJ properly evaluated Dr. Corson's opinion; and the R&R's finding that the ALJ properly evaluated Dr. Marshall's opinion. The Court addresses each objection in turn.

### A. Whether the R&R Properly Framed the Issues

Turner first objects "to the manner in which the U.S. Magistrate Judge framed the issues," contending that the R&R's framing "set the stage for a focus on substantial evidence, to the exclusion of review of the ALJ's legal errors." (ECF No. 24 at 2.)

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The "most important factors" in assessing medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, and "explain how [it] considered the supportability and consistency factors" in

reaching these findings. *Id.* (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.' *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

The R&R framed the issues as: "(1) whether the ALJ properly evaluated the opinion of Dr. Corson in determining Turner's RFC; and (2) whether the ALJ properly evaluated the opinion of Dr. Marshall in determining Turner's RFC." (ECF No. 23 at 7.) There is no indication that "proper evaluation" refers only to whether the ALJ's decision was supported by substantial evidence. In addressing each issue, the R&R considered both whether the ALJ applied the proper legal standards—i.e., whether the ALJ sufficiently explained how it considered the supportability and consistency factors in assessing the persuasiveness of each medical opinion—and whether there was substantial evidence in the record to support the ALJ's decision. (*Id.* at 7–12.) The Court therefore overrules this objection.

**B. Whether the ALJ Properly Evaluated Dr. Corson's Medical Opinion**

Turner next objects to the R&R's finding that the ALJ sufficiently explained the supportability of Dr. Corson's medical opinion. (ECF No. 24 at 2.) Turner argues that the ALJ's analysis of the supportability factor was "nothing more than a conclusory statement." (ECF No. 24 at 2–3.)

The ALJ found Dr. Corson's opinion to be "partially persuasive." (AR 27.) The ALJ explained that Dr. Corson's opinion was "generally supported by her own examination findings" and "generally consistent with the claimant's radiographic imaging, her negative EMG study results, and the recent examination findings of Dr. Marshall[.]" (*Id.*) However, the ALJ found that Dr. Corson's conclusion that

Turner is limited to lifting 10 pounds occasionally was "not consistent with her own examination findings or the recent exam findings of Dr. Marshall" and did not include this limitation in the RFC. (*Id.*)

### 1. Supportability

Turner argues that in rejecting Dr. Corson's lifting limitation, the ALJ did not address the supportability factor. (ECF No. 24 at 2–5.) The Commissioner argues that the ALJ found the lifting limitation was not supported by Dr. Corson's own examination findings. (ECF No. 21 at 7.) Despite the ALJ's imprecise language, the Court agrees. The ALJ stated that the lifting limitation was unpersuasive in part because it was not "consistent with Dr. Corson's own examination findings." (AR 27.) This this is a supportability finding because it addresses an internal check—Dr. Corson's own findings. *See Woods*, 32 F.4th at 793 n. 4 (explaining that the ALJ "plainly did not intend to make a supportability finding," but instead meant that the opinion was "inconsistent with other record evidence" and reminding ALJs to use the terms of art with precision).

Turner appears to agree at times that the reference to Dr. Corson's own examination findings constitutes the supportability portion of the analysis, and next objects that the analysis was conclusory and therefore insufficient. (ECF No. 24 at 4.) Turner cites *Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 (D. Nev. Jan. 4, 2024). However, the court in *Walker* explained that the ALJ "failed to clearly state his analysis of the supportability and consistency factors for any of the medical opinions he considered." *Id.* In that case, the court could not review the ALJ's decision because it would "need to guess what analysis pertains to which factor." *Id.* Here, the Court can look to both Dr. Corson's examination findings in the record and the ALJ's summary of those findings in the decision. Although the ALJ does not go into detail in the portion of the analysis that Turner cites, the decision discusses Dr. Corson's findings at other points: explaining that Dr. Corson found "mildly reduced

6

strength in her right lower extremity" but otherwise normal strength. (AR 22.) The ALJ reasonably concluded that this evidence did not support Dr. Corson's lifting limitations.

### 2. Consistency

Turner does not object to the R&R's finding that the ALJ's decision sufficiently addressed the consistency factor. The Court agrees with the R&R's finding that the ALJ sufficiently explained the consistency of Dr. Corson's opinion. (ECF No. 23 at 10.) The ALJ explained that Dr. Corson's opinion was "generally consistent with the claimant's radiographic imaging, her negative EMG study results, and the recent examination findings of Dr. Marshall" but explained that the lifting limitation was not consistent with Dr. Marshall's examination findings. (ECF No. 23 at 10; AR 27.)

Turner also does not object to the R&R's finding that the ALJ's decision was supported by substantial evidence and the Court adopts that finding. (ECF No. 23 at 10–11.)

### C. Whether the ALJ Properly Evaluated Dr. Marshall's Medical Opinion

Turner objects to the R&R's finding that the ALJ properly evaluated Dr. Marshall's opinion, arguing that the R&R failed to address Turner's concern that the ALJ misrepresented the evidence. (ECF No. 24 at 6.) In the motion to remand, Turner argued that the ALJ's analysis of Dr. Marshall's opinion, although it addressed both the supportability and consistency factors, was inadequate because it misrepresented the evidence in the record. (ECF No. 15 at 13.)

The ALJ found Dr. Marshall's opinion unpersuasive and provided an in-depth explanation for that finding. (AR 24–25, 27–28.) The ALJ explained that Dr. Marshall had provided intermittent care for Turner as her primary care physician since June 2018. (AR 27.) In March 2019, Dr. Marshall reported that Turner was limited to lifting and carrying ten pounds rarely, less than ten pounds occasionally, standing and walking for two hours per workday, sitting for two

7

hours per workday, and that she needed to alternate between sitting and standing and lie down every one to two hours. (*Id.*) In January 2023, Dr. Marshall reported many similar limitations, additional environmental and postural limitations, and stated that Turner would be expected to be off task ten percent of the workday and absent four days per month. (*Id.*)

### 1. Supportability

The ALJ explained that Dr. Marshall's opinion was not well supported because her statements did not accurately represent her own examination findings, which showed "some reduced strength and sensation in her right lower extremity and right hand but otherwise normal strength and sensation in her other extremities." (*Id.*) Dr. Marshall's examination found "moderately reduced 3/5 strength in her right hip, mildly reduced 4/5 strength in her right knee and ankle, some subjective tenderness in her cervical, thoracic, and lumbar spine, and some subjectively diminished sensation in her right leg and hand" and found that "her strength and sensation were normal in all other motor groups, and her gait was normal." (AR 25.) This analysis is a succinct summary of Dr. Marshall's examination, not a misrepresentation of the record. (*See* AR 1019–21.)[2]

The ALJ also considered Turner's overall treatment record, including Dr. Marshall's own statement that the treatment she provided had been "very

---

[2] Dr. Marshall's examination findings included the following:

> R hip flexion; 3+/5; R knee extension 4/5; R knee flexion 4/5; R ankle dorsiflexion 3+/5; R ankle plantarflexion 4/5
> L lower extremity with 5/5 strength in all tested groups
> Bilateral upper extremities with 5/5 strength in grip, biceps flexion/extension, shoulder abduction
> Sensation as follows:
> Subjectively diminished diffusely over right lower extremity and diminished over the dorsal palmar aspect of the right hand
> MSK: normal gait, thoracic kyphosis, tender to palpation over right gluteal region, thoracic paraspinal muscles, lumbar paraspinal muscles, cervical paraspinal muscles and trapezius muscles

(*Id.*)

8

intermittent."[3] (AR 27; *see* AR 1019 ("Discussed with patient that because her care has been very intermittent, will complete to the best of my ability however may not be as helpful as had she been receiving regular care.".) This is also an accurate representation of the record.

### 2. Consistency

The ALJ next explained that Dr. Marshall's opinion was inconsistent with other evidence in the record, including radiographic imaging, EMG study results, Dr. Corson's examination findings, and Turner's overall course of treatment. (AR 27.) The ALJ provided more detail on each of these pieces of evidence elsewhere in its decision. 2018 X-rays showed "multilevel degeneration changes in the claimant's cervical, thoracic, and lumbar spine, including thoracic wedge compression fractures and lumbar facet joint arthrosis. (AR 24; *see* AR 482.) 2018 MRI results confirmed "a mild disc bulge and multilevel facet changes." (AR 22; *see* AR 645.) EMG results in 2019 were "normal with no signs of radiculopathy." (AR 25; *see* AR 754–55.) Dr. Corson's examination findings included normal range of motion, strength, and sensation in all extremities except her right lower extremity. (AR 22, 25; *see* AR 582–87.) This analysis is an accurate summary of the evidence that the ALJ cites, and not a misrepresentation of the record.

To support her argument that the ALJ misrepresented the evidence, Turner points to other portions of the record which she argues provide support for Dr. Marshall's opinion. (ECF No. 15 at 13–15.) However, as the Commissioner has explained, the "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Here, the ALJ reasonably considered Dr. Marshall's opinion

---

[3] The ALJ includes this factor in its consistency analysis, but it plainly relates to the supportability of Dr. Marshall's findings and the Court analyzes it as such.

9

based on the supportability and consistency factors and found it unpersuasive. The ALJ did not mischaracterize the record, and there is substantial evidence in the record to support its findings.

**IV.   CONCLUSION**

It is therefore ordered Judge Baldwin's Report and Recommendation (ECF No. 23) is adopted in full.

It is further ordered that Turner's motion for remand (ECF No. 15) is DENIED.

The Clerk of the Court is directed to enter judgment and close this case.

DATED: March 28, 2025

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE